IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.                          CRIMINAL ACTION NO. 2:13-cr-00024-01

ANDREW ERIC LOUGH,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

*I.    BACKGROUND*

On January 29, 2013, a federal grand jury returned a five-count indictment charging Defendant, Andrew Eric Lough, and a co-defendant, Charles Edward Thomas, with offenses relating to the distribution of oxycodone, a Schedule II controlled substance. More specifically, Count One alleges that Defendant conspired to distribute oxycodone in violation of 21 U.S.C. § 846; Counts Four and Five allege that Defendant possessed oxycodone with the intent to distribute, and that he distributed oxycodone, respectively, both in violation of 21 U.S.C. § 841(a)(1). The same day the indictment was returned, Defendant was arrested, made an initial appearance, and the United States filed a motion to detain Defendant pending trial.

In preparation for his arraignment and detention hearing, a pretrial services report was prepared by the United States Probation Office assessing Defendant's personal background and

criminal history. Defendant is twenty-eight years old, unemployed, and a life-long resident of southern West Virginia. Among other matters, the report detailed Defendant's extensive criminal history. Although his criminal history does not include felony convictions, it does include fifteen misdemeanor convictions that fairly evenly span a ten year period beginning in 2002 and continuing through 2012. These convictions include battery, petit larceny, providing false information to a police officer, destruction of property, carrying a concealed weapon, and an April 12, 2011 conviction for violating a protective order. The circumstances concerning the April 12, 2011, conviction are notable because the state court ordered that Defendant have no contact during his two-year term of probation with his father, Kermit Neff, or his sister, Krystal Lough. Additionally, the pretrial services report states that in the past seven years, six domestic violence protection orders against Defendant have been requested. One of these protective orders, dated November 28, 2006, was filed by his sister, Krystal Lough. Another two, filed in 2008 and 2011, were filed by Defendant's father. The remaining three requests for protective orders were filed by two former girlfriends and a woman who performed bookkeeping and caretaking duties for Defendant's father.[1]

In its motion to detain, the United States invoked the statutory rebuttable presumption under 18 U.S.C. § 3142(e) that there are no conditions or combination of conditions that will reasonably assure the safety of any other person and the community if Defendant were to be released on bond. The United States' reliance on the rebuttable presumption is based on the fact that Defendant was indicted for controlled substance offenses with maximum terms of imprisonment of ten or more years. *See* 18 U.S.C. § 3142(f)(1)(C).

---

1  As noted below, Defendant presented evidence at the February 6, 2013, hearing, that the protective order filed by Defendant's father's bookkeeper may have been denied.

On February 1, 2013, United States Magistrate Judge R. Clarke VanDervort arraigned Defendant and conducted a hearing on the United States' motion to detain. Following the presentation of evidence and argument by counsel, Magistrate Judge VanDervort, over the United States' objection, ordered that Defendant be released on a $10,000 unsecured bond subject to the condition that he remain on home confinement with GPS electronic monitoring.[2]

On February 4, 2013, the United States filed a motion seeking a stay of Magistrate Judge VanDervort's release order, which Magistrate Judge VanDervort granted that same day. The United States then filed its motion and supporting memorandum seeking an order from this Court revoking Magistrate Judge VanDervort's release order. On February 5, 2013, Defendant filed his response to the United States' motion.

On February 6, 2013, the Court held a hearing on the United States' motion and conducted a *de novo* review of the record. At the hearing, Defendant did not dispute that the rebuttable presumption applied in this case. In response to the Court's inquiry if Defendant had any additional evidence to offer in support of his release on bond, Defendant tendered a copy of an October 26, 2010, court order denying a protective order to the woman who performed bookkeeping and caretaking duties for Defendant's father. Thereafter, the Court heard argument by counsel, reviewed the relevant statutory factors, made findings of fact, granted the United States' motion for revocation of Magistrate Judge VanDervort's release order, and stated its reasons for its ruling on the record.

---

2  Magistrate Judge VanDervort's order directed that the United States Marshals Service keep Mr. Lough in custody until such time as Nicholas County officials set up and implemented the necessary electronic monitoring device.

3

## II. GOVERNING LAW

" 'When the district court acts on a motion to revoke or amend a magistrate judge's pretrial release order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release.' " *United States v. Young*, No. 5:05-cr-63, 2006 WL 2861070 *1 (N.D. W. Va. Oct. 5, 2006) (Stamp, J.) (citing *United States v. Stewart*, 19 Fed. App'x. 46, 48 (4th Cir. 2001) (citing *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992)). The Court is not limited to the magistrate's findings and may conduct a second evidentiary hearing to make its *de novo* determination. 41 Geo. L.J. Ann. Rev. Crim. Proc. 356, 357 (2012) (citations omitted).

Pursuant to 18 U.S.C. § 3142(b) & (c), the Court must order the pretrial release on bond of a person, subject to certain specified statutory conditions, unless the court finds that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person and the community.

If, after a detention hearing, the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must detain the defendant before trial. 18 U.S.C. § 3142(e)(1).

Subject to rebuttal by the defendant,

[I]t shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed--

(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*). . . .

18 U.S.C. § 3142(e)(3).

In determining a defendant's suitability for bond, the Court must take into account the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). The facts to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2).

### III. DISCUSSION

Pursuant to 18 U.S.C. § 3142(i), a detention order must include written findings of fact and a written statement of the Court's reasons for detention. Accordingly, the Court will now memorialize the findings it made at the February 6, 2013, detention hearing.

In making its determination that no condition or combination of conditions would reasonably assure the safety of any other person and the community and that pre-trial detention of Defendant was appropriate, the Court conducted a *de* novo review of the record in this case, carefully considered the evidence and argument offered by the parties, and considered all of the

applicable factors under 18 U.S.C. § 3142(f). As stated on the record at the February 6, 2013, hearing, the Court found that the nature and circumstances of the offenses charged in the indictment are drug offenses with statutory maximum penalties of ten or more years. Aggravating the fact that the alleged offense conduct involves distribution of highly addictive pain medication was evidence that Defendant possessed firearms in connection with his alleged drug-dealing activities.

The Court also considered the weight of the evidence against Defendant and found that it was significant, particularly with respect to the conspiracy and possession with intent to deliver counts. In making this finding that Court noted that the evidence is that the police found 75 oxycodone pills and $2,000 in cash locked in a safe that was kept in Defendant's bedroom of his home. This cash included "buy money" used by the confidential informant in a controlled purchase of oxycodone pills from Defendant's alleged co-conspirator in this case. Two witnesses, Defendant's sister, Krystal Lough, and Charles Thomas, advised police that the pills in the safe belonged to Defendant. Additionally, the United States has evidence that, at the time the police were conducting their search of Defendant's house, Defendant was in Alabama purchasing a truck with approximately $32,000 in cash, wrapped in $1,000 bundles contained in a freezer bag.

The Court further considered Defendant's personal history and characteristics. Defendant's criminal history is extensive. As noted earlier, Defendant has continuously engaged in criminal activity the entirety of his adult life as evidenced by his fifteen misdemeanor convictions dating from 2002 through 2012. These convictions include crimes of violence, carrying a concealed weapon, and an April 12, 2011, violation of a domestic violence protective order. Defendant's sentence of probation for the April 12, 2011 conviction included an order by

the court that Defendant was to have no contact with his sister, Krystal Lough, until April 2013. The Court notes that Defendant appears to have flouted this condition of his probation based on the evidence that Ms. Lough interacted with Defendant during one of the controlled buys, had a key to Defendant's safe, and was present in Defendant's house when the police conducted their search of the residence.

At the hearing, the Court further noted that Ms. Lough is now an important witness for the United States. Additionally, Defendant's history shows that five domestic violence protective orders were obtained against Defendant in the past seven years. Importantly, one of these orders was requested by Ms. Lough. The Court further considered that Defendant is a life-long resident of the community, but is currently essentially unemployed and his relations with his family, putting it mildly, are strained. Of particular concern to the Court is the fact that at the time of the charged offenses, Defendant was serving a state sentence of probation at the time the alleged offenses occurred.

The Court further found that Defendant's witnesses were unpersuasive. One of these witnesses, Darlene Jackson, was unaware that Defendant had been the subject of multiple protective orders or the fact that Defendant possessed firearms, including a "sniper rifle." Another witness, Melody Stillwell, was aware of some of the protective orders, but when asked on cross-examination about one of the individuals who obtained a protective order, Ms. Stillwell, a character witness for the defense, testified: "She wasn't the one that got killed?" (Docket 33 at 16.) No effort was made by Defendant at the detention hearing or the February 6, 2013, hearing to clarify this troubling testimony. Defendant's third character witness, Samuel Thomas, has known Defendant for four-and-a-half years and is his friend. The Court discounted Mr. Thomas's

7

testimony that Defendant would not pose a danger to anyone because Mr. Thomas's testimony that Defendant has "made upwards of four and five thousand dollars a week" restoring and selling cars was not credible. This testimony was obviously calculated to help his friend explain why he had so much cash. Further, it appeared that much of Mr. Thomas's testimony was derived from what Defendant had told him.

Based on the foregoing facts and the Court's examination of all of the factors contained 18 U.S.C. § 3142(f), the Court granted the United States' motion for an order revoking Magistrate Judge VanDervort's release order. The Court found that Defendant failed to rebut the presumption that there are no conditions or combination of conditions of bond that would reasonably assure the safety of people, particularly, Krystal Lough, or the community. The Court further found that its ruling was supported by clear and convincing evidence.

## IV. CONCLUSION

Pursuant to 18 U.S.C. § 3142(i), the Court **DIRECTS** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Court further **DIRECTS** that Defendant be afforded reasonable opportunity for private consultation with counsel. On order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined shall deliver

Defendant to a United States Marshal for the purpose of an appearance in connection with court proceedings.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: February 13, 2013

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE